# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEITH SMITH**                                            **CIVIL ACTION**

**VERSUS**                                                 **NO. 14-0916-SS**

**JEH JOHNSON, SECRETARY**
**DEPARTMENT OF HOMELAND**
**SECURITY, FEDERAL EMERGENCY**
**MANAGEMENT AGENCY**

## ORDER AND REASONS

For the reasons described below, the motion of the defendant, Jeh Johnson, Secretary of

the Department of Homeland Security, Federal Emergency Management Agency ("Defendant"),

to dismiss and/or for summary judgment is granted.

## Procedural Background

On April 28, 2014, Keith Smith ("Smith") filed a complaint against Defendant alleging

violations of Title VII, 42 U.S.C. § 2000e, and Whistleblower Protection Act, 5 U.S.C. § 1201.

Rec. doc. 1.[1]  The parties consented to proceed before the assigned Magistrate Judge.  Rec. doc.

13.  Smith's Whistleblower claim was dismissed with prejudice.  Rec. doc. 15.  Defendant filed a

motion to dismiss and/or for motion for summary judgment as to the remaining claims.  Rec.

---

[1]  Smith has filed other employment discrimination cases in this Court.  On February 27, 2006, he
filed a complaint against U.S. Army Corps of Engineers.  CA 06-0953-JCW.  He alleged that:  (1) he
began working for the Corps of Engineers in 2002; and (2) he was subjected to racial discrimination and
retaliation so severe as to create a hostile work environment.  The defendant's motion for summary
judgment was granted.  The Court of Appeals affirmed the judgment of the District Court.

On September 27, 2013, Smith filed a complaint against Janet Napolitano, Secretary Department
of Homeland Security, Federal Emergency Management Agency.  CA 13-5967-SS.  Smith asserted
claims for race and reprisal discrimination under Title VII.  Smith's appeal to the EEOC Office of Federal
Operations was pending when Smith filed suit.  The Court lacked jurisdiction and the defendant's motion
to dismiss was granted and judgment entered on March 18, 2014.

On September 21, 2014, Smith filed a complaint against Sally Jewell, Secretary of the
Department of Interior.  CA 14-2169-SSV-DEK.  Smith alleges that he was discriminated against based
on his race and reprisal activity.

doc. 24.  Smith submitted an opposition.  Rec. doc. 27.[2]  Defendant submitted a reply.  Rec. doc. 28.[3]

### **Allegations of the Plaintiff**

Smith alleges that he worked for FEMA from January 5, 2008 to August 15, 2009 (a little more than 19 months) as an Acquisition Business Specialist in FEMA's Gulf Coast Recovery Office ("Gulf Coast Office") and the Louisiana Transition Recovery Office ("Louisiana Office").

Smith makes claims based on his race, African-American, relating to non-selection, disparate treatment, harassment and retaliation.  He is pursuing four of the ten claims that were raised in the administrative proceedings.[4]

1.  On or about January 6, 2008, Smith was not interviewed or selected for the Project Manager position in the Acquisition Program Management office in the Gulf Coast Office even though he met the qualifications.

4.  In February 2009, Smith was denied a promotion to GS-14 from GS-13 and a pay increase even though his manager, McDade, promised the promotion when Smith attained Level III  certification in Program Management.

---

[2]  Defendant filed its motion on August 11, 2015.  Smith's opposition was due on August 19, 2015.  Smith's request that the motion be continued was granted.  The new deadline for Smith's opposition was September 15, or more than a month after Defendant filed the motion.  Notwithstanding the additional time, Smith's opposition demonstrates an almost total lack of editing.  For example, at the top of page 2 there is an eleven line long passage that begins "[t]his issue was addressed years ago immediately after the . . . ."  Rec. doc. 27 at 2.  The same identical eleven line long passage appears on pages 6 and 7 of the memorandum.

[3]  In support of the motion, Defendant submitted the Declaration of Melissa Pleasant with FEMA ("Pleasant Declaration").  Attached to the Pleasant Declaration is the administrative record, including the deposition of Smith taken in the administrative proceeding.  Defendant also submitted a declaration from McDade and a statement of undisputed facts.  Rec. doc. 24.  Smith's opposition includes a response to Defendant's statement of undisputed facts and his uncontested facts.  It is in the form of an affidavit from Smith.  Rec. doc 27 (Attachment).  It does not appear that the parties engaged in any discovery after the filing of this suit.

[4]  See attached Appendix.

7.   On July 28, 2009, Smith was released from the Acquisition Business Specialist position in the Gulf Coast Office, effective August 15, 2009, while a similarly situated employee, Lisa Thibodeaux, with disciplinary issues was not released.

8.   In August 2009, the Disaster Assistance Employee ("DAE") Cadre Manager and another senior manager treated Smith unfairly by offering him a DAE Contract Specialist position that paid less than his credentials and experience warranted.  To be compensated at a higher level, Smith provided an explanation of his credentials (FAC-C Level III certification in Contracting).  His DAE Cadre Manager did not have the same certification.

### Standard for Defendant's Motion

For Defendant's motion for summary judgment, the Court looks to Fed. R. Civ. P. 56.  It provides in pertinent part that summary judgment will be granted when ". . . the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."  Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002).  Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.

Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187.  If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.  If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  Celotex, 106 S.Ct. at 2553-54.  A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994).  The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.  See Lujan, 110 S. Ct. at 3188.   Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993).  If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.  See Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

### Background on Smith's employment.

Smith graduated from high school in 1979.[5]  Smith Dep. 11.  He graduated from St. Leo University in Florida in 1986 with a Bachelor's of Management degree.  Smith Dep. 11-12.

---

[5]  Attachment Five to the Pleasant Declaration is the deposition of plaintiff, dated July 28, 2011.  Page numbers in the transcript are cited as "Smith Dep. __."

Smith reports that he is certified as:   Defense Acquisition Initiative Workforce ("DAWIA") Contracting (Level III) (2004); FAC-C Contracting (Level III) (2008); Department of Homeland Security ("DHS") Program Manager (Level II) (2008); DHS Program Manager (Level III) (2009); DHS Contracting Officers; and Technical Representative (2009).  Rec. doc. 27 at 25.

Prior to Smith's employment with FEMA, he was employed by the U.S. Army Corps of Engineers as a Contract Price Cost Analyst in the Contracting Office as a GS-12.  Smith Dep. 15-17.  He began his employment with the Corps of Engineers as a GS-11.  Smith Dep. 17.  He left the Corps of Engineers for a promotion with FEMA, where he was employed as a GS-13. Smith Dep. 16.

Smith began at FEMA on January 5, 2008 as an Acquisition Business Specialist ("Acquisition Specialist") in the Gulf Coast Office.  Smith Dep. 22-23.  He was interviewed by Bill McDade, white, and John Ward, black.  Smith Dep. 23.  He was hired by McDade.  Smith Dep. 23.  He was to serve as Chief Acquisition Oversight Manager.  Lisa Thibodeaux, white, reported to him.  Her title was COTR liaison.  Smith Dep. 24 and 30.  Smith was a CORE employee, which is a temporary employee.  Smith Dep. 26.  Smith remained with FEMA until August 15 or 16, 2009, when the agency right-sized and 1,000 employees were terminated. Smith Dep. 27.

After being notified of his termination, John Ward and Mike McLaughlin offered Smith a position as a Contract Specialist with the DAE Cadre as a D-3 - $72,683 per year.  Smith Dep. 178-79 and 182.  Smith never deployed as a member of the DAE Contracting Cadre because after about 70 days he resigned.  Smith Dep. 194-95.

Smith began at the Bureau of Ocean Energy Management Regulation and Enforcement on October 25, 2009 as a Contract Specialist (GS-13).  Smith Dep. 32-33.

<u>Analysis</u>

**1.  <u>Non-selection for Project Manager position.</u>**

The announcement of the Project Manager position at the Gulf Coast Office was made in May or June, 2007.  Smith Dep. 43 and Exhibit 1 to Smith Deposition.  Smith applied for it. Smith Dep. 44.  He was not interviewed for the position.  Smith Dep. 46.  He never heard back. Smith Dep. 56.  Smith was offered the Acquisition Specialist position in the Gulf Coast Office. He began working in that position by January 6, 2008.  Smith Dep. 22-23.

When he was offered the Acquisition Specialist position in the Gulf Coast Office, he knew that he was not selected for the Project Manager position.  Smith Dep. 56.  When Smith began working at the Gulf Coast office, John Ward took him around and introduced him.  At that time Smith learned that Rachel Douglas, Ashley Banks and Andrew Fox were Project Managers. Smith Dep. 57.  Instead of him, they were selected for the three Project Manager positions. Smith Dep. 56.  Rachel Douglas and Ashley Banks are African-American females.  Smith Dep. 57.  Andrew Fox is a white male.  Smith Dep. 57.  All three were hired at level GS-13.  Smith Dep. 58.  In October 2008, the three were promoted to GS-14.  Smith Dep. 58.  Smith does not know why they were selected for the Project Manager positions.  Tr. 60.  McDade was the supervisor of the Project Managers.  Tr. 61.

Smith stated that he was told by John Ward in February 2008 that he made the certification list for the Project Manager position.  Smith Dep. 46.  Smith acknowledged that he did not bring an EEO complaint within 45 days of his understanding that he was not selected for the Project Manager position.  Smith Dep. 66.  In his opposition to Defendant's motion, Smith

6

contends that he was not told by Ward that he made the certification list for the Project Manager position until February 2009.  Rec. doc. 27 at 4.[6]  Smith asked Ward why he was not interviewed for the position, but Ward did not have an answer.  Smith Dep. 48.

Smith assumed that Human Resources made the decision on who was included on the certification list for the Project Manager position.  Smith Dep. 49.  Smith was not certain that Human Resources would know his race.  Smith Dep. 49.  He was not aware of anything in his application that indicated his race.  Smith Dep. 49.  He did not know who interviewed the candidates for the Project Manager position. Smith Dep. 50.  He assumed it was Ward and McDade.  Smith Dep. 50.  He assumed that McDade and Ward received the certification list and chose people from the list to interview for the Project Manager position.  Smith Dep. 53.

When he applied for the Project Manager job, he did not know John Ward or Bill McDade.  Smith Dep. 51-52.  "At the time that they made the selections of who to interview, did Bill McDade know your race?"  "I doubt if Bill McDade knew who I was."  Smith Dep. 54.  In his memorandum Smith contradicts this statement on when McDade knew who he was.  Smith's memorandum states:

> The interviews for the GS-0340-13/14 [the Project Manager position] occurred after the position [Acquisition Business Operations Specialist] Claimant was interviewed for, therefore Mr. McDade and Mr. Ward would have been aware of Claimant's race.

Rec. doc. 27 at 3.  Smith assumes the decision-maker for the Project Manager position was McDade.  Smith Dep. 49.

---

[6]  Smith responds that he "misspoke this in the deposition, I stated notification by John Ward occurred 2008 but . . . [the Report of Investigation] page 7 states that notification occurred after denial of promotion by McDade which was February 2009."  Rec. doc. 27-1, page 7 (Smith's Response to Defendant's Undisputed Fact No. 25).

The Defendant contends that the claim is not timely.  In <u>Tolbert v. U.S.</u>, 916 F.2d 245 (5th

Cir. 1990), the Fifth Circuit stated:

> There are two requirements for filing a Title VII action in federal court: (1) the complaint must be filed within the time allotted by Title VII and (2) the complainant must first have exhausted her administrative remedies.  Failure to comply with either of these requirements wholly deprives the district court of jurisdiction over the case; it is the well-settled law of this circuit that each requirement is a prerequisite to federal subject matter jurisdiction.

<u>Id</u>. at 247-48.  Pursuant to 29 C.F.R. § 1614.105 (1994), "[a]n aggrieved person must initiate

contact with a counselor within 45 days of the date of the matter alleged to be discriminatory... ."

It is undisputed that Smith knew he was not interviewed or selected for the Project

Manager position when he was offered the Acquisition Specialist position in the Gulf Coast

Office and began working in that position by January 6, 2008.  Smith Dep. 46 and 56.  At that

time, he was introduced to the three persons who were hired as Project Managers.  Smith did not

initiate contact with the EEO counselor until more than a year later, on March 31, 2009.

Smith argues that the time to initiate a complaint did not begin to run in 2008.  Instead, it

was not until he learned in February 2009 that he had been on the certification list for the Project

Manager position that the time began to run.  Smith does not explain why knowledge that he was

not interviewed or selected for the position and others were hired for the position did not start the

time for initiating an EEO complaint.

The record demonstrates that Smith learned he was not interviewed and not selected for

the Project Manager position when he was offered the Acquisition Specialist position in the Gulf

Coast Office and began working in that position by January 6, 2008.  Smith did not initiate an

EEO complaint until March 31, 2009. Smith's claim is not timely.  The Court is without

jurisdiction to consider it.  Defendant's motion for summary judgment is granted as to the claim

that he was not interviewed or selected for the Project Manager position even though he met the qualifications.

Assuming *arguendo* that Smith's claim is timely, under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973), Smith is required to establish a *prima facie* case.

> This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

93 S.Ct. at 1824.  Smith, an African-American, belongs to a protected class.  He applied for the Project Manager position.  It is undisputed that he made the certification list, so he was qualified for the position.  Despite his qualifications, he was neither interviewed nor selected.  FEMA filled the three available Project Manager positions with two African-American females and one white male.[7]  Assuming his EEO claim was timely, Smith cannot establish a *prima facie* case based on his non-selection in January 2008 for the Project Manager position.

**4.  <u>February 2009 – Smith denied promotion to GS-14</u>.**

Smith testified that in February 2008, McDade told him that in order to promote him to GS-14, Smith had to obtain Level III Program Management certification.  Smith Dep. 117.  McDade approved Smith's tuition, travel expense and time away to obtain the certification.  Smith Dep. 122.

Smith's Level III Program Management certification was dated January 26, 2009.  He received notification of it on or about February 5 or 6, 2009.  Smith Dep. 123.  On February 9, 2009, Smith had a conversation with McDade, where Smith asked about the promotion.

---

[7]  <u>Coleman v. Braniff Airways, Inc.</u>, 664 F.2d 1282, 1284 (5th Cir. 1982), is a discharge case.  In order to establish the fourth element for a *prima facie* case based on the employee's discharge, the employee was required to demonstrate that after the discharge, the employer filled the positions with non-minorities.

McDade responded that it could not be done.  Smith Dep. 123-24.  Smith's diary revealed that on February 9, 2009, McDade told him that he could not promote him or otherwise increase his pay.[8]  McDade did not say why he could not promote him.  Smith Dep. 124-125.

Smith was told by his Gulf Coast Office co-workers that prior to Smith starting work in January 2008, McDade promoted Thibodeaux from GS-12 to GS-13 in 2007.  Smith Dep. 126-28.  Smith described Thibodeaux as a similarly situated employee.  Smith Dep. 135.

Thibodeaux did not have the same position or job duties as Smith.  Smith Dep. 135.  Thibodeaux was promoted from CORE – Financial Analyst (GS-12) to CORE – Acquisition Business Specialist (GS-13) on December 27, 2007.  She was selected from "Direct Hire."[9]

The first issue is when did McDade tell Smith he was not promoted.  Smith did not initiate his EEO complaint until March 31, 2009 or more than 45 days after February 9, 2009, the date of the diary entry.

Smith responds that the first bullet point in the July 1, 2010 letter from the FEMA Office of Equal Rights states that on February 26, 2009 he was denied a promotion to GS-14 even though McDade promised to promote him.[10]  Defendant acknowledges that the July 1, 2010 letter refers to February 26, 2009 as the date the promotion was denied, but cites the Final Agency Decision of March 22, 2013.  Before the issuance of that decision, evidence from the

[8] Attachment 1 to the Pleasant Declaration is the Report of Investigation ("ROI").  Page 5 of ROI Exhibit F-19 is a page from Smith's diary for February 9, 2009 (Rec. doc. 24-6, page 29).  In the deposition, the examiner inadvertently refers to the date of the conversation with McDade as February 26, 2009.  Smith Dep. 124, lines 16-20.

[9]  Pleasant Declaration – First Supplemental Investigation File – Exhibit F-18-B – Notification of Personnel Action, page 138 (Rec. doc. 24-7, page 138).  Defendant refers to this as SIF I, page 138 (at Box 45).

[10]  Pleasant Declaration – Attachment 1 - ROI Exhibit F-7 – July 1, 2010 Letter from FEMA Office of Equal Rights to Smith describing the EEO complaint accepted by the Agency, page 1 (Rec. doc. 24-5, page 5).

diary established the date on which McDade told Smith that he could not promote him. The decision's description of the fourth claim states, "[o]n February 9, 2009, the PMO Chief denied Complainant a promotion and pay increase to GS-14. . . ."[11] The record demonstrates that Smith was told by McDade on February 9, 2009 that his promotion was not possible. Smith did not initiate the EEO complaint within 45 days of that date. His claim is not timely. The Court is without jurisdiction to consider it.

> Assuming the claim is timely, Smith must establish a *prima facie* case.

> To establish a *prima facie* case of racial discrimination in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).

Smith and Thibodeaux worked in the same part of the Gulf Coast office and shared the same supervisor, McDade. McDade described Smith's position as lacking in any built-in promotion potential. He referred to it as a "dead end 13". Rec. doc. 24-11 (Supplemental Declaration of William McDade, para. 2). In contrast Douglas, Banks and Fox had built-in promotion potential from GS-13 to GS-14. Id. at para. 8.

There is an issue about whether McDade possessed the "direct hire" authority when Smith obtained his Level III certification in January 2009. Smith testified that McDade did not tell him why he could not promote him. Smith Dep. 125. Smith referred to the Report of Investigation as saying that "direct hire" authority was eliminated in June 2008. Smith Dep. 125. The findings of fact in the Final Agency Decision state that in April 2009, FEMA decided to

---

[11] Pleasant Declaration – Attachment 4 – Final Agency Decision, page 3 (Rec. doc. 24-9, page 3).

right-size and the Louisiana Office "would lose the ability to fill positions by 'direct hire' without vacancy announcements."   Pleasant Declaration – Attachment 4 – Final Agency Decision, page 4 (Rec. doc 24-9, page 4, no. 3).  It will be assumed that in January and February of 2009, McDade still possessed "direct hire" authority.

Subject to the assumption, the following are undisputed.

a. The Project Manager positions filled by Douglas, Banks and Fox were GS-13 positions with built-in promotion to GS-14 available.  It was unnecessary to promote them to a new position.  They could hold their Project Manager positions and, after the passage of the requisite time period, be promoted to GS-14.

b. Prior to Smith's FEMA employment, Thibodeaux was promoted from a Financial Analyst (GS-12) position to an Acquisition Business Specialist (GS-13) position.  She was not in a built-in promotion position like Douglas and the others.  Thibodeaux was promoted to a different GS-13 position.

c. Smith was hired as an Acquisition Business Specialist (GS-13).  The position did not have built-in promotion to GS-14 like the Project Manager positions for Douglas, Banks and Fox.  From the time that Smith received his Level III certification in January 2009 until McDade resigned from the Gulf Coast office in April 2009,[12] there is no evidence that there was a GS-14 position to which McDade could have promoted Smith.

Smith has not satisfied the fourth element of the *prima facie* case.  He has not demonstrated that he was treated less favorably because of his membership in a protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.  Lee, 574 F.3d at 259.

---

[12] Rec. doc. 24-11 (Supplemental Declaration of William McDade, para. 9).

Defendant's motion for summary judgment is granted as to the claim that he was denied a promotion to GS-14 from GS-13 even though McDade promised it to him when Smith completed a certain level of certification.

**7.  July 28, 2009 – Smith was released while Thibodeaux was not.**

In his complaint, Smith alleges:

> On July 28, 2009, Claimant was released from his Acquisition Business Specialist position, effective August 15, 2009, while the COTR/OL (Thibodeaux) was retained, even though she had disciplinary problems.  This was based on race and gender and protected activity.

Rec. doc. 1, para. 42, page 7.  Defendant contends Smith cannot establish a *prima facie* case of employment discrimination or demonstrate pretext.  Rec. doc. 24 (Memorandum, page 18-21).

Smith's opposition does not refer to either race or gender in connection with this claim. Instead, he states:

> Thibodeaux was allegedly retained because she had more seniority than Claimant. When Claimant pointed out that this was not true, the Agency changed its reason for releasing Claimant and stated that his position was specifically targeted.  This is classic pretext.  (Response to Agency UMF No(s) 59; Claimant UMF(s) 3, 4, 14 and 16(7) a-g).

Rec. doc. 27, page 9.  Smith refers to the claim as one for reprisal and retaliation.  Rec. doc. 27, page 20 (Claimant's Uncontested Material Facts – No. 4).

Smith cites:  (1) his admission of no. 59 of Defendant's statement of undisputed facts concerning the guidelines for the right-sizing (Rec. doc. 27-Attachment, page 16); (2) nos. 3 and 4 of his statement of uncontested facts;[13] (3) no. 14 of his statement of uncontested facts, where

---

[13]  They are:

3. Thibodeaux was retained in employment after the "right-sizing" and the reason given was greater seniority than Claimant.  This was later changed showing that the initial reason, greater seniority, was pretext since Thibodeaux did not have seniority over Claimant.

he repeats the claim (Rec. doc. 27-Attachment, pages 22-23); and (4) his restatement of the claim a final time (Rec. doc. 27-Attachment, page 27-28 [Claimant UMF 16(7) a-g]).

In support of his statements, Smith refers to two exhibits from the Report of Investigation. The first is the EEO Counselor's report, dated May 21, 2009, with summaries of notes of interviews, including one with McDade. McDade resigned from FEMA before the right-sizing occurred. The interview notes are silent about why Smith was right-sized and Thibodeaux was not.[14] The second exhibit is an affidavit from Smith, dated May 2, 2012. Smith cites pages 2 and 5 of the affidavit. There is no reference to Thibodeaux's seniority on these pages. The affidavit is in the form of questions by a representative of Defendant and answers by Smith. At the conclusion Smith is asked if he wants to add anything. Smith asks the questioner how and who determined that Thibodeaux was senior to him.[15]

The March 22, 2013 Final Agency Decision is silent about seniority. It states:

> Complainant was in a unique position identified for right-sizing; therefore, his release was determined on the basis of the functions of his position rather than his seniority or performance in comparison to any other employee.

Pleasant Declaration – Attachment 4 – Final Agency Decision, page 8 (Rec. doc. 24-9, page 8). There were criteria for the right-sizing; for example, when program activities for an entire function in the Louisiana Office were completed, all positions within the function were

---

4. Claimant pointed out that he had more seniority than Thibodeaux given his time in Federal service dating back to 2001 and his disabled Veterans status. At that time, the Agency changed the reason for retaining Thibodeaux, no longer based on seniority, now based on a unique position identified for right sizing.

Rec. doc. 27, pages 11 and 12.

[14] Pleasant Declaration – Attachment Two – ROI – First Supplemental Investigative File - Exhibit B 1, pages 5-6 (Rec. doc. 24-7, pages 34-35).

[15] Pleasant Declaration – Attachment Two – ROI – First Supplemental Investigative File - Exhibit F-1, pages 2, 5, 14 and 15 (Rec. doc. 24-7, pages 52, 55, 64 and 65).

eliminated.  Id.  The Defendant contends that seniority was never proffered as a reason for retaining Thibodeaux while releasing Smith.  Rec. doc. 28, page 8.  Smith has not cited to any evidence, other than his own statements, where Thibodeaux's seniority was presented as the reason for retaining her.

As a CORE employee, Smith was a temporary employee.  Smith Dep. 26.  On April 10, 2009, FEMA announced the closing of the Gulf Coast Office and the absorption of its functions into the Louisiana Office.  Rec. doc. 24 - Defendant's Statement of Undisputed Facts – no. 46.  The Louisiana Office was to be right-sized and reorganized.  Id. – no. 47.  Smith knew that as a result of the reorganization, employees would be released.  Smith Dep. 165.  FEMA notified Smith that his employment would be terminated effective August 15, 2009.  Id. – no. 57.  At the same time, six other employees in the Program Management Office were terminated.  They were Caucasians and African-Americans including Joseph Garcia (Hispanic), John Ward (African-American) and Andrew Fox (Caucasian).  McDade was not involved in the right-sizing because he had resigned three months before.  Id. – no. 58.  Lisa Thibodeaux was retained after July 2009.  Id. – no. 59.

The first issue is whether Smith has established a *prima facie* case that he was right-sized on account of his race.  Smith satisfies the requirements for the first three elements:  (1) membership in the protected class; (2) qualification for the position performed by Thibodeaux; and (3) presence of an adverse employment action.

Defendant contends that Smith cannot establish the fourth element because there were seven persons in the Program Management Office who were right sized.  The remaining six included both Caucasians and African-Americans.  In Coleman, the employee was required to demonstrate that after the discharge, the employer filled the position with non-minorities.  664

15

F.2d at 1284.  Although FEMA eliminated positions, <u>Coleman</u> remains applicable.  Counting Thibodeaux, there were at least eight persons/positions in the Program Management Office. Seven of these positions, including the one held by Smith, were right-sized and the persons occupying them were released.  Thibodeaux, a Caucasian, was retained.  Under these circumstances, Smith establishes a *prima facie* case of discrimination based on race.

The next issue is whether Smith can establish a *prima facie* case that he was right-sized in retaliation for his EEO complaint.

> To establish a *prima facie* case of retaliation, the plaintiff must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action.

<u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556-57 (5th Cir. 2007).  The first two elements are undisputed.  The question is whether there is a causal connection between his filing the EEO complaint on March 31, 2009 and the decision to right-size him.  It is undisputed that FEMA's decision to close the Gulf Coast Office and transition to the Louisiana Office was not triggered by Smith's protected activity.  It is undisputed that because of the decision a substantial number of persons were right-sized.  In these circumstances, Smith cannot demonstrate a causal connection between the decision to include him in the right-sizing and his EEO complaint.

With Smith's *prima facie* case of discrimination based on race and assuming he can present a case based on retaliation, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory or non-retaliatory reason for right-sizing Smith.[16]  <u>McCoy</u>, 492 F.3d at 557. The March 22, 2013 Final Agency Decision states:

---

[16]  Although Smith alleged in his complaint that this claim was based on gender as well as race and retaliation, Smith makes no argument in support of gender discrimination in his opposition.  Rec. doc. 27. Accordingly, the gender discrimination claim is deemed abandoned.

> Complainant was in a unique position identified for right-sizing; therefore, his release was determined on the basis of the functions of his position rather than his seniority or performance in comparison to any other employee.

Pleasant Declaration – Attachment 4 – Final Agency Decision, page 8 (Rec. doc. 24-9, page 8).

Defendant presents a legitimate non-discriminatory reason for right-sizing Smith.

In <u>Rachid v. Jack In The Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004), the Fifth Circuit stated:

> [I]f the defendant meets its burden of production (of a legitimate, non-discriminatory reason for its action), the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic... .

<u>Id</u>. at 312.

Defendant contends that Smith cannot establish that its reason for terminating him was pretextual.  It urges that Smith cannot make an inference of racial animus because:  (1) six of his co-workers in the Program Management Office were released at the same time, including Caucasians and African-Americans; (2) the guidelines for who was let go came from FEMA in Washington, D.C.; (3) the local decision-maker, Joseph Garcia, who also lost his position in the right-sizing, merely followed the guidance given to him; (4) management made a legitimate business decision to downsize to address the dwindling staffing needs; and (5) McDade, who resigned before the right-sizing and was at the center of Smith's prior claims, had nothing to do with the decision to right-size Smith.

Smith argues that when he pointed out that he had seniority over Thibodeaux, FEMA changed its position and described him as right-sized because he was in a unique position identified for right-sizing.  Smith describes this as "classic pretext".  Smith, however, has not cited to any evidence to substantiate this and contradict the agency's reason for right-sizing him. Smith has not created a genuine issue of material fact that Defendant's reason for right-sizing

him was not true or that his race or EEO complaint was another reason for right-sizing him. Defendant's motion for summary judgment will be granted as to Smith's claim that he was right-sized in July 2009, while Thibodeaux was not.

**8.  Unfair treatment when offered DAE Contract Specialist position**.

Immediately after he was notified of the decision to right-size him effective August 15, 2009, he was contacted by John Ward and Mike McLaughlin, the Cadre Manger of the Disaster Assistance Employee ("DAE") Cadre.  Smith Dep. 178-80.  Smith was offered a position as a Contracting Specialist at the DAE Cadre.  Smith Dep. 179.

McLaughlin told him that Richard Spillane would call him.  Smith Dep. 180.  Both McLaughlin and Spillane are white.  Smith did not meet either one of them.  Smith Dep. 180-81. Because he needed a job, Smith joined the DAE Cadre.  Smith Dep. 181.  Smith understood that Ward, McLaughlin and Spillane were trying to help him by giving him an opportunity to convert to the DAE Cadre.  Smith Dep. 190.

At the DAE Cadre, compensation is determined by grades and levels within each grade. Smith wanted to be brought in at Grade E, Level III ("E-3").  Smith Dep. 184.  At Spillane's request, Smith submitted his justification for the E-3 compensation.[17]  Smith Dep. 184.  Based on his credentials, Smith contends that he should have been brought in as an E-3.  Smith Dep. 190-191.  He also contends that his experience with the Corps of Engineers and the Gulf Coast Office of FEMA was the equivalent of a four year disaster deployment.[18]

---

[17]  Pleasant Declaration – Attachment 1 – Exhibit F-18 (Rec. doc. 24-6 at pages 21-24) is Smith's Justification for Elevation to Pay Grade E-3 in the Disaster Assistance Employee Cadre ("Justification").

[18]  See Justification, page 1.

After Smith submitted the justification, Spillane told him he would be brought in at Grade D, Level III ("D-3") or a salary of $72,683.  Smith Dep. 182-83 and 185.  This was less than his compensation at the Gulf Coast Office.  Smith Dep. 182.

A Contracting Specialist is a different function from the position he had at the Gulf Coast Office.  Smith Dep. 180.  In the DAE Cadre, a Contracting Specialist works at the sites of disasters.  Smith Dep. 186.  Smith had never been deployed as a Contract Specialist at a disaster site prior to July 2009.  Smith Dep. 186.

Smith did not know whether McLaughlin or Spillane knew about his March 31, 2009 EEO complaint.  Smith Dep. 192.  Smith took the position at the D-3 salary.  R. 193.  Smith was never deployed as a member of the Contracting Cadre.  Smith Dep. 194.  He resigned effective October 25, 2009 to take the position with the Bureau of Ocean Energy Management Regulation and Enforcement.  Smith Dep. 195.

Rachel Douglas, an African-American female, was hired at the D-2 level in the DAE Cadre effective March 28, 2010.  Smith admits that Douglas was at a lower level (D-2) in the DAE Cadre than Smith, who had converted to the DAE Cadre at the D-3 level.  Rec. doc. 27 (Attachment, page 18).

Smith contends that:  (1) immediately after notification that he was right-sized, John Ward offered him a position in the DAE Contracting Cadre at the D-3 level effective August 16, 2009; (2) he submitted justification for compensation at the E-3 level; (4) when he converted to the DAE Cadre, there was only one other person in the DAE Cadre with FAC-C Contracting (Level III) certification; and (5) his complaint about not being given the E-3 level salary is based on his race and his credentials.  Rec. doc. 27, page 9.[19]  The Defendant responds that

---

[19]   In his deposition Smith testified that his complaint concerning the D-3 compensation at the DAE Cadre was not based on race.  Smith Dep. 190.

compensation higher than the D-3 level was not warranted because Smith had not participated in any deployments.[20]

Smith must establish four elements for his *prima facie* case based on race discrimination. (1) he belongs to a racial minority; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.  McDonnell Douglas, 93 S.Ct. at 1824.

Smith contends he is qualified for the E-3 position.  Defendant responds that he was not qualified because he lacked deployment experience.  Smith conceded that he was never deployed in response to a disaster.  While he argues that his experience with the Corps of Engineers and with the FEMA Gulf Coast Office qualifies as deployment in response to a disaster, he presents no evidence to support this.  The only person identified by Smith as hired in the DAE Cadre after him, Rachel Douglas, was brought in at a lower level.  Smith cannot establish a *prima facie* case of employment discrimination based upon race.

Assuming Smith established a *prima facie* case, the burden shifts to Defendant to produce admissible evidence that, if believed, would establish that Defendant's action was motivated by a legitimate nondiscriminatory reason.  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 1093 (1981).  Defendant explained that Smith's experience did not warrant the E-3 level of compensation because of the absence of any experience as a Contract Specialist at a disaster site.  Defendant presents evidence that, if believed, would establish that Defendant's action was motivated by a legitimate nondiscriminatory reason.

---

[20] Pleasant Declaration – Attachment 4 – March 22, 2013 Final Agency Decision, page 8 (Rec. doc. 24-9, page 8).

The analysis turns to whether Defendant's reason was a pretext for race discrimination. John Ward, an African-American, was one of the persons who contacted him about joining the DAE Cadre.  Smith Dep. 178-79.  Rachel Douglas, an African-American, was brought into the DAE Cadre after him.  Smith does not contradict the evidence that payment at the E-3 level was tied to many more deployments than he had at the time of his conversion to the DAE Cadre.[21] Smith testified that at the time of his conversion he had never been a Contract Specialist at a disaster site.  Smith Dep. 186.  He presents no evidence that the offer to employ him in the DAE Cadre as a D-3 rather than an E-3 was based on race.

Smith has not created a genuine issue of material fact that Defendant's reason for bringing him into the DAE Cadre as a D-3 instead of an E-3 was not true or that his race or EEO complaint was another reason for denying him an E-3 position.  Rachid, 376 F.3d at 312. Defendant's motion for summary judgment is granted as to Smith's claim concerning his 70 days of employment by the DAE Cadre at the D-3 level.

*   *   *

IT IS ORDERED that the motion of the defendant, Jeh Johnson, Secretary of the U.S. Department of Homeland Security, Federal Emergency Management Agency for summary judgment (Rec. doc. 24) is GRANTED.

New Orleans, Louisiana, this 5th day of October, 2015.

_____
**SALLY SHUSHAN**
**U.S. Magistrate Judge**

---

[21]  Pleasant Declaration – Attachment 2 – First Supplemental Investigation File – Exhibit F-4-1, page 5 (Email from Richard Spillane to Michael McLaughlin, dated July 31, 2009 at 11:41 a.m.) (Rec. doc. 24-7, page 86).

## APPENDIX

On July 1, 2010, FEMA's Office of Equal Rights issued a letter with ten bullet points describing incidents that would be investigated in support of Smith's claims.[22]  On July 28, 2011, Smith was deposed and examined on each bullet point in chronological order.[23]  A Final Agency Decision was released on March 22, 2013.  It lists the claims in chronological order.[24]

Paragraph nos. 18 to 45 of Smith's April 28, 2014 complaint concern his claims based on non-selection, disparate treatment, harassment and retaliation.  Rec. doc. 1 at 3-8.  Most of these paragraphs correspond to claims in the Final Agency Decision.

Defendant's memorandum and Smith's opposition use the numbers found in the Final Agency Decision to refer to the claims.  The ten claims are below.

William McDade was Smith's supervisor.  Lisa Thibodeaux reported to Smith.  McDade and Thibodeaux had worked together at a previous employer.

### 1.  Non-selection for Project Manager position.[25]

On about January 6, 2008, Smith was not selected for the Project Manager position in the Acquisition Program Management office even though he met the qualifications for the position.

---

[22] Pleasant Declaration – Attachment 1 – Report of Investigation – Exhibit F-7 (Rec. doc. 24-5, pages 5-7).

[23]  Pleasant Declaration – Attachment 5 – Deposition of Keith Smith, dated July 28, 2011.  Page numbers in the transcript are cited as "Smith Dep. __."

[24] Pleasant Declaration – Attachment 4, pages 3-4 (Rec. doc. 24-9, pages 3-4).

[25] This is the last bullet point on page one of the July 1, 2010 letter.  It is referred to in Paragraph no. 6 in Smith's complaint.  It is treated as Claim no. 1 by the Defendant.  Rec. doc. 24 (Memorandum at 10-14).  Smith is questioned on this claim at pages 42-76 of his deposition.  Smith refers to this claim on pages 2 and 21 of his memorandum.

**2.  June 23, 2008 – Negative quarterly performance rating**.[26]

On June 23, 2008, McDade issued Smith a negative quarterly performance rating.  Smith believed this was retaliation for addressing the performance of a subordinate, Thibodeaux, who previously worked for McDade.  In addition, his evaluation contained direct quotes from a meeting held on February 26, 2008 with Thibodeaux.

**3.  McDade's preferential treatment of Thibodeaux**.[27]

On a continuous basis McDade showed preferential treatment to Thibodeaux.

**4.  February 2009 – Smith denied promotion to GS-14**.[28]

In February 2009, Smith was denied a promotion to GS-14 from GS-13 and a pay increase even though McDade promised to do so when Smith completed a certain level of certification in Program Management.

**5.  McDade's failure to support him as supervisor**.[29]

Smith believed that McDade failed to support him as a supervisor and uphold discipline to his subordinate, Thibodeaux.

---

[26]  This is the second bullet point on page 1 of the July 1, 2010 letter.  Paragraph nos. 27 and 28 in Smith's complaint correspond to this bullet point.  It is treated as Claim no. 2 by the Defendant.  Rec. doc. 24 (Memorandum at 10-14).  Smith is questioned on this claim at pages 76-92 of his deposition.

[27]  This is the third bullet point on page 1 of the July 1, 2010 letter.  Paragraph nos. 21-27 in Smith's complaint correspond to this bullet point.  It is treated as Claim no. 3 by the Defendant.  Rec. doc. 24 (Memorandum at 14-18).  Smith is questioned on this claim at pages 93-103 of his deposition.

[28]  This is the first bullet point on page 1 of the July 1, 2010 letter.  Paragraph no. 31 in Smith's complaint corresponds to this bullet point.  It is treated as Claim no. 4 by the Defendant.  Rec. doc. 24 (Memorandum at 10-14).  Smith is questioned on this claim at pages 115-136 of his deposition.  Smith refers to this claim on pages 2, 5 and 6 of his memorandum.  Rec. doc. 27.

[29]  This is the first bullet point on page two of the July 1, 2010 letter.  It is referred to in Paragraph no. 32 in Smith's complaint.  It is treated as Claim no. 5 by the Defendant.  Rec. doc. 24 (Memorandum at 14-18).  Smith is questioned on this claim at pages 103-115 of his deposition.

**6.  May 2009 – Unfair selection process for Supervisory Contract Specialist position**.[30]

In May 2009, Smith applied for the Supervisory Contract Specialist position.  He alleges that the selection process was unfair because he was not allowed to interview for the position.

**7.  July 28, 2009 – Smith was released while Thibodeaux was not.**[31]

On July 28, 2009, Smith was released from the Acquisition Business Specialist position, effective August 15, 2009, while a similarly situated employee, Thibodeaux, was not.  Smith believed this was unfair because Thibodeaux had disciplinary issues and Smith did not.

**8.  Unfair treatment when offered DAE Contract Specialist position**.[32]

Smith alleged that the Cadre Manager and another senior manager treated him unfairly by offering him a DAE Contract Specialist position that paid less than his credentials and experience warranted.  To be compensated at a higher level pay Smith provided justification to explain his credentials (FAC-C level III certified in Contracting) while his Cadre Manager did not have the same certification.

---

[30]  This is the only bullet point found on page three of the July 1, 2010 letter.  It is referred to in Paragraph no. 38 of Smith's complaint.  It is treated as Claim no. 6 by the Defendant.  Rec. doc. 24 (Memorandum at 20-21).  Smith is questioned on this claim at pages 136-155 of his deposition.

[31]  This is the third bullet point on page two of the July 1, 2010 letter.  It is referred to in Paragraph no. 42 of Smith's complaint.  It is treated as Claim no. 7 by the Defendant.  Rec. doc. 24 (Memorandum at 21-22).  Smith is questioned on this claim at pages 155-177 of his deposition.  Smith refers to this claim in pages 3 and 23 of his memorandum.  Rec. doc. 27.

[32]  This the penultimate bullet point on page two of the July 1, 2010 letter.  It is referred to in Paragraph no. 43 of Smith's complaint.  It is treated as Claim no. 8 by the Defendant.  Rec. doc. 24 (Memorandum at 22-23).  Smith is questioned on this claim at pages 177-195 of his deposition.  Smith refers to this claim in pages 3 and 24 of his memorandum.  Rec. doc. 27

**9.  Smith "black listed."** [33]

Smith alleged that he was may have been "black listed" for challenging the pay grade for the position.

**10.  April 19, 2010 – Smith was not offered a higher salary than less qualified employee.** [34]

On April 19, 2010, Smith was informed that a former coworker was hired into the Contracting DAE Cadre and was paid more than $72,683.00, even though the employee, Rachel (Douglas) McNeil, had not completed the certification process for level III Program Manager training.  Smith believed this was unfair because he was not afforded a higher starting salary upon entrance to the DAE Cadre. [35]

*     *     *

In his opposition, Smith states that he dismisses claim nos. 2, 3, 5, 6, 9 and 10.  He is pursuing claim nos. 1, 4, 7, and 8.  He refers to claim nos. 3 and 5 as demonstrating the preferential treatment that McDade granted Thibodeaux.  Rec doc. 27 at 1.

---

[33]  This is the last bullet point on page two of the July 1, 2010 letter.  It is referred to in Paragraph no. 45 of Smith's complaint.  It is treated as Claim no. 9 by the Defendant.  Rec. doc. 24 (Memorandum at 23-24).  Smith is questioned on this claim at pages 196-203 of his deposition.

[34]  This is the second bullet point on page two of the July 1, 2010 letter.  It is referred to in Paragraph no. 44 of Smith's complaint.  It is treated as Claim no. 10 by the Defendant.  Rec. doc. 24 (Memorandum at 22-23).  Smith is questioned on this claim at pages 203-212 of his deposition.

[35]  Smith asserted this claim after he spoke to Rachel Douglas about her compensation at the DAE Cadre, but before Defendant presented evidence that Douglas, in fact, was paid less than Smith.  He now admits that she was paid less than he was at the DAE Cadre.  Rec. doc. 27 (Attachment, page 18).